UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | |
|---|---|
| RUDOLPH P. KESZTHELYI, ) | |
| ) | |
|     *Plaintiff*, ) | |
| v. ) | No. 1:06-CV-187 |
| ) | |
| GREG BOWMAN, Chattanooga Police ) | *Chief United States District Judge Collier* |
| Department; TONY ISSON; Drug Enforcement ) | |
| Administration; CHATTANOOGA POLICE ) | |
| DEPARTMENT; DRUG ENFORCEMENT ) | |
| AGENCY; ) | |
| ) | |
|     *Defendants*. ) | |

## **MEMORANDUM**

The court is in receipt of a *pro se* prisoner's complaint filed pursuant to the Alien Tort Statute, 28 U.S.C. § 1350, by plaintiff Rudolph P. Keszthelyi ("Keszthelyi"). Plaintiff asserts he is entitled to money damages because, after arresting him, law enforcement failed to advise him of his right, under Article 36 of the Vienna Convention on Consular Relations ("VCCR"), to contact the South African consulate.[1]

---

[1] Article 36 of the Vienna Convention, to which the United States and South Africa are both signatories, provides in relevant part:

> if he so requests, the competent authorities of the receiving States shall, without delay, inform the consular post of the sending State if, within its consular district, a national of the State is arrested or committed to prison or to custody pending trial or is detained in any other manner. Any communication addressed to the consular post by the person arrested, in prison, in custody or detention shall be forwarded by the said authorities without delay. The said authorities shall inform the person concerned without delay of his rights under this subparagraph.

Article 36, para. 1(b) of the Vienna Convention on Consular Relations, April 24, 1963, 21 U.S.T. 77.

## I. Non-Dispositive Motions

Presently before the Court are three non-dispositive motions filed by Keszthelyi which the Court will address. First, Keszthelyi has filed a motion to correct the Court's previous Order wherein his lawsuit was referred to as a civil rights complaint filed pursuant to 42 U.S.C. § 1983 (Court File No. 13). The Court's December 1, 2006 Order (Court File No. 9) granting the motion for extension of time in which to answer shall be **AMENDED** by first deleting the words "civil rights" in the first sentence of the Order and second, by substituting "the Alien Tort Statute, 28 U.S.C. § 1350" for "42 U.S.C. § 1983" in the first sentence of the Order (Court File No. 13). The order entered on December 1, 2006, shall remain the same in all other respects and will be incorporated herein fully by reference.

Second, plaintiff's motion to compel defendants to obtain separate and independent counsel will be **DENIED** as the Court's review of the complaint reveals plaintiff has failed to state a claim upon which relief may be granted (Court File No. 15).

Finally, plaintiff's motion requesting an extension of time in which to respond to the defendants' answer will be **DENIED** as the complaint is being dismissed as explained below (Court File No. 16).

## II. Standard of Review

*Pro se* pleadings filed in civil cases are liberally construed and held to a less stringent standard than formal pleadings drafted by lawyers. *McNeil v. United States*, 508 U.S. 106, 113 (1993); *Boag v. MacDougall*, 454 U.S. 364, 365 (1982); *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991). However, *pro se* status does not exempt the plaintiff from the requirement that he comply with relevant rules of procedural and

substantive law. *Hulsey v. State of Texas*, 929 F.2d 168, 171 (5th Cir. 1991); *Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir. 1981). *Pro se* plaintiffs must comply with Rule 8 of the Federal Rules of Civil Procedure which provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." *LRL Properties v. Portage Metro Housing Authority*, 55 F.3d 1097, 1104 (6th Cir. 1995). Although the standard of review is liberal, it does require more than the bare assertion of legal conclusions. *Lillard v. Shelby County Bd. Of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996) (standard of review for dismissing a complaint pursuant to Fed. R. Civ. P. 12(b)(6)-failure to state a claim upon which relief may be granted); *LRL Properties*, 55 F.3d at 1103-04; *Allard v. Weitzman* (In re DeLorean Motor Co.), 991 F.2d 1236, 1240 (6th Cir. 1993); *Hartfield v. East Grand Rapids Public Schools*, 960 F. Supp. 1259, 1268 (W.D. Mich. 1997).

Under the Prison Litigation Reform Act ("PLRA"), the Court must dismiss a case at any time if the Court determines it is frivolous or fails to state a claim upon which relief can be granted:

> When screening a prisoner complaint, a district court must examine both § 1915(e)(2) and § 1915A. If the civil action seeks redress from a governmental entity, officer, or employee, the district court must dismiss the complaint, or any portion of the complaint, which (a) is frivolous, malicious, or fails to state a claim upon which relief may be granted, or (b) seeks monetary relief from a defendant who is immune from monetary relief. 28 U.S.C. § 1915A. Should the complaint contain any allegations that do not fall within § 1915A, the district court must then examine the complaint under § 1915(e)(2). The requirements of §1915(e)(2) overlap the criteria of § 1915A. Section 1915A is restricted to prisoners who sue government entities, officers, or employees. In contrast, § 1915(e)(2) is restricted neither to actions brought by prisoners, nor to cases involving government defendants. Further, § 1915A is applicable at the initial stage of the litigation, while § 1915(e)(2) is applicable throughout the entire litigation process. A case that may not initially appear to meet §1915(e)(2) may be dismissed at a future date should it become apparent that the case satisfies this section. Thus, in prisoner cases, the district court must first examine a complaint under § 1915A and then review the complaint under § 1915(e)(2) before the case can

3

> proceed in due course. A district court is required to screen all civil cases brought by prisoners, regardless of whether the inmate paid the full filing fee, is a pauper, is pro se, or is represented by counsel as the statute does not differentiate between various civil actions brought by prisoners. The dismissal of a complaint under § 1915(e)(2) or § 1915A does not negate a prisoner's obligation to pay the filing fee in accordance with § 1915(b)(1)- (2). See In re Tyler, 110 F.3d 528, 529-30 (6th Cir. 1997). We make it explicit: a court's responsibility under the Prison Litigation Act is to first examine the financial status of a prisoner and make the assessment of fees. After the fees have been assessed, the merits of a complaint or appeal may be reviewed. Our mandate, however, does not prevent a district court from making the fee assessment and conducting the screening process in the same opinion or order.

*McGore v. Wrigglesworth*, 114 F.3d 601, 608 (6th Cir. 1997). As explained below, plaintiff's complaint fails to state a claim because there is no binding law that provides the Vienna Convention on Consular Relations ("VCCR") creates an individual right enforceable by federal courts. 28 U.S.C. § 1915(e)(2).

**III. Analysis**

Plaintiff asserts he is entitled to money damages because law enforcement failed to advise him of his right to contact the South African consulate in violation of Article 36 of the VCCR. Plaintiff supports his claim with a Seventh Circuit case[2] which reaches a contrary conclusion to the Sixth Circuit law[3] to which this Court is bound. The United States and South Africa are signatories

---

[2] *Jogi v. Voges*, 425 F.3d 367 (7th Cir. 2005) (Being the first court to directly confront the question of whether a private civil action independent of the criminal proceeding may be based on the VCCR, the Seventh Circuit, rejecting the Fifth and Sixth Circuit opinions finding the VCCR does not confer individual rights on detained nationals, remanded the case to the district court after finding Article 36 confers individual rights on detained nationals).

[3] *United States v. Emuegbunam*, 268 F.3d 377, 396, 394 (6th Cir. 2001) (Holding "that the Vienna Convention does not create a right for a detained foreign national to consult with the diplomatic representatives of his nation that the federal courts can enforce[,]" the Sixth Circuit concluded that dismissal of the indictment is not a remedy for violation of Article 36 of the VCCR),

4

to the VCCR, a multilateral treaty. Article 36, in pertinent part, requires its member states to ensure that a foreign national, charged with a violation of host country law, knows he has the right to contact an official representative of his native country for assistance with legal proceedings.

Plaintiff is a South African citizen who pleaded guilty to one count of money laundering in violation of 18 U.S.C. § 1957, and one count of distributing cocaine hydrochloride in violation of 21 U.S.C. § 841. Plaintiff is presently serving his 120 month federal sentence. The record before the Court indicates no state or federal official ever advised plaintiff of his right under the Vienna Convention to contact the South African consulate for assistance, nor is there any indication any law enforcement officials ever contacted the South African consulate on their own initiative and informed him of plaintiff's arrest. While serving his prison sentence, and after filing a direct appeal, a motion pursuant to 28 U.S.C. § 2255, and a complaint under 42 U.S.C. § 1983, Keszthelyi apparently learned about the Vienna Convention, which has prompted this lawsuit.

Keszthelyi seeks compensatory damages to remedy this alleged violation. Plaintiff has named a Chattanooga police officer and a federal Drug Enforcement Agent and their respective agencies as defendants.[4] Plaintiff's complaint relies upon the Alien Tort Statute, 28 U.S.C. § 1350, which establishes jurisdiction in the district courts over a civil action by an alien for a tort committed in violation of a treaty of the United States.

---

*cert. denied*, 535 U.S. 977 (2002).

[4] The Chattanooga police officer and his agency filed an answer. Neither the Federal Drug Enforcement Agent nor his agency have filed any type of response.

There appears to be a contradiction between the broad language of the clause in the Preamble to the VCCR, which disclaims any general intent to protect individuals, and the language of Article 36, which plaintiff argues gives him an individual judicially enforceable right of action.

However, the United States Court of Appeals for the Sixth Circuit has held the Vienna Convention on Consular Relations does not create a right for a detained foreign national to consult with the diplomatic representative of his nation that the federal courts can enforce. *United States v. Emuegbunam*, 268 F.3d at 394("[W]e hold that the Vienna Convention does not create a right for a detained foreign national to consult with the diplomatic representatives of his nation that the federal courts can enforce"). Relying upon the preamble to the VCCR which expressly disclaims creation of any individual rights, the Sixth Circuit concluded the rights contained in Article 36 of the VCCR regarding consular communication and contact with nationals arrested in foreign states belong to the party states and not individuals.

There is a split among the Circuits as to whether a private individual right of action is conferred by the VCCR.[5] Some courts, including the Sixth Circuit, have concluded that the consular notification provisions of the VCCR do not confer a judicially enforceable private right of action on an individual foreign national whose rights under the treaty have been violated. *See United States v. Emuegbunam*, 268 F.3d at 394*; United States v. Jimenez-Nava*, 243 F.3d 192 (5th Cir.),

---

[5] Although the VCCR does not specify whether it establishes individually judicially enforceable rights, the VCCR does include an optional protocol concerning the compulsory settlement of disputes to be resolved in the International Court of Justice. Although the United States was originally a signatory along with numerous other countries, it does not appear South Africa joined the optional protocol. Moreover, the United States has since given notice of its withdrawal from the Optional Protocol on March 7, 2005. *Sanchez-Llamas v. Oregon*, 126 S.Ct. 2669, 2675 (2006). Nevertheless, the VCCR itself does not prescribe a judicial remedy or other recourse for the violation of Article 36.

*cert. denied*, 533 U.S. 962 (2001) (giving substantial deference to the State Department's view of treaty interpretation that the VCCR does not establish rights of individuals but only state-to-state rights and obligations); *Cardenas v. Dretke*, 405 F.3d 244 (5th Cir. 2005) (concluded consular notification provisions of VCCR does not bestow upon foreign nationals any private, judicially-enforceable right to consult with consular officials after an arrest), *cert. denied*, 126 S.Ct. 2986 (2006); *Mendez v. Roe*, 88 Fed.Appx. 165 (9th Cir.) (no clearly established federal law directs that consular access provision of Article 36 of the VCCR institutes a judicially enforceable right), *cert. denied*, 541 U.S. 1089 (2004); *United States ex rel. Lujan v. Gengler,* 510 F.2d 62, 76 (2nd Cir.), *cert*. *denied*, 421 U.S 1001 (1975)(suggesting that only signatory nations to a treaty, and not their individual citizens, can protest its violation); *Diaz v. Van Norman*, 351 F.Supp. 2d 679 (E.D.Mich.2005) (Finding it was bound by the law of the Sixth Circuit, the court concluded the VCCR does not create a right for detained foreign nationals to consult with diplomatic representatives of their nation); *see contra Jogi v. Voges*, 425 F.3d 367 (7th Cir. 2005)(The district court had ruled it did not have subject matter jurisdiction over the Alien Tort Statute complaint that alleged law enforcement failed to inform him of his right under the VCCR to notify his consulate of his arrest. The Seventh Circuit remanded the case to the district court stating Article 36 of the VCCR conferred individually enforceable rights on detained nationals).

The United States Supreme Court has not answered the question of whether the VCCR creates judicially enforceable individual rights. *Sanchez-Llamas v. Oregon* 126 S.Ct. 2669, 2678 (2006) (The Supreme Court held that, assuming the Vienna Convention created enforceable individual rights, suppression of evidence via the exculsionary rule was not an appropriate remedy

for violation of the VCCR); *Sosa v. Alvarez-Machain*, 542 U.S. 692 (2004)[6] (Construing the Federal Tort Claims Act and Alien Tort Statute, the Supreme Court held that "a single illegal detention of less than a day, followed by the transfer of custody to lawful authorities and a prompt arraignment, violates no norm of customary international law so well defined as to support the creation of a federal remedy"). Finding it unnecessary to resolve the question whether the Vienna Convention grants individuals enforceable rights, the Supreme Court in *Sanchez-Llamas* held that even assuming that foreign detainees have judicially enforceable rights under Article 36 of the VCCR to consular notification and communication, suppression is not an appropriate remedy for a violation of the Convention. Although the Supreme Court did not hold detainees have judicially enforceable rights under Article 36 of the VCCR in *Sosa v. Alvarez-Machain*, 542 U.S. 692 (2004), the Supreme Court did discuss several reasons for using "great caution in adapting the law of nations to private rights." *Id.* at 728. Nevertheless, neither Supreme Court case controls the instant case.

The Court's research has not revealed a case where the Sixth Circuit or Supreme Court has addressed whether Article 36 of the VCCR provides a judicially enforceable right that can be raised under the Alien Tort Statute. However, the Court is bound by the law of the Sixth Circuit, *i.e.*, *United States v. Enuegbunam*, which held that the VCCR does not create a right for a detained

---

[6] In *Sosa* the Drug Enforcement Administration (DEA) came to believe Humberto Alvarez-Machain (Alvarez), a Mexican physician had participated in the torture and execution of a DEA agent in Mexico, for which he was indicted in the United States. Failing to obtain the cooperation of the Mexican government, the DEA hired Mexican nationals, including Jose Francisco Sosa, to abduct Alvarez from his house, hold him in a motel and then bring him by private plane to Texas, where federal officers arrested him. After trial for the torture and murder the court granted Alvarez's motion for a judgment of acquittal. After his return to Mexico, Alvarez instituted a suit under the Federal Tort Claims Act and the Alien Tort Statute against Sosa, six Mexicans, the United States and four DEA agents.

8

foreign national to consult with the diplomatic representatives of his nation that the federal courts can enforce. Therefore, absent a ruling by the Supreme Court or Sixth Circuit that foreign detainees have judicially enforceable rights under Article 36 of the VCCR which can be raised under the Alien Tort Statute, plaintiff is not entitled to any relief.

Accordingly, being bound by the law of the Sixth Circuit, the Court concludes Keszthelyi has failed to state a claim upon which relief may be granted such that his complaint, filed pursuant to 28 U.S.C. § 1350, the Alien Tort Statute, must be **DISMISSED**. 28 U.S.C. § 1915(e)(2)(b).

A judgment order will enter **DISMISSING** the plaintiff's complaint in its entirety.

**/s/**
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**